IN THE CIRCUIT COURT OF THE TWENITH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

POINTE ESTERO CONDOMINIUM
ASSOCIATION, INC.

    Plaintiff,

v.                                      CASE NO.:

LANDMARK AMERICAN INSURANCE
COMPANY,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, POINTE ESTERO CONDOMINIUM ASSOCIATION, INC., by and through its undersigned counsel, with its Complaint against LANDMARK AMERICAN INSURANCE COMPANY, and as grounds therefore states:

*Jurisdictional And Venue Allegations*

**1.** This Complaint centers upon an ongoing insurance coverage dispute between the Parties, the subject matter of which exceeds $30,000.00, exclusive of attorneys' fees, interests, and costs.

**2.** POINTE ESTERO CONDOMINIUM ASSOCIATION, INC. ("Plaintiff", "Association", "Insured", or "Pointe Estero") is a Florida Not-For-Profit Corporation authorized to conduct business activities within Lee County, Florida, and, thus, is properly subject to this Court's jurisdiction.

**3.** At all times relevant hereto, including those events giving rise to this action, LANDMARK AMERICAN INSURANCE COMPANY ("Landmark" or "Insurer") has been a for-profit Florida corporation conducting the business of selling and providing insurance

1

coverage within the State of Florida, including Lee County, Florida; accordingly, the Insurer is properly subject to this Court's jurisdiction.

4.      This action has been brought in the proper venue, as it concerns a dispute between the Parties on matters and/or locations arising out of, accruing in, culminating in, and/or situated in Lee County, Florida.

### *The Insurance Policy*

5.      The Plaintiff's insurance coverage dispute with the Insurer concerns Landmark Insurance *Company Policy No. LHD900179,* which was in effect from April 7, 2017, to April 7, 2018 ("Policy").

6.      The Policy was purchased by (and ultimately delivered to) the Insured in Lee County, Florida. The Plaintiff attaches hereto as **Exhibit "A"** what it believes to be a true and correct copy of the Policy, the terms of which are incorporated herein by reference. To the extent that Exhibit "A" is deemed inaccurate or incomplete, a true and correct copy of the Policy is in Landmark's possession and will be filed with this Court upon the Insured's receipt of the same.

7.      At all times material hereto, the Policy insured the premises owned by the Insured and which are located at or in the environs of 6640 Estero Blvd., Fort Myers Beach, FL 33931 ("Insured Premises"); thus, the Insured had, and continues to have, an insurable interest in the same.

8.      The Policy affords the Insured various coverages with various limits, including, without limitation, "Building" coverage for those certain scheduled Buildings listed therein on a "Replacement Cost" basis, which is subject to a "Calendar Year Hurricane Deductible" of 5% (hereinafter "Building Coverage").

9.      The Policy's Building Coverage is also subject to various stated additional coverages, exclusions, limitations, and conditions, including, but not limited to, (i) those

provisions set forth in the *Condominium Association Coverage Form* (Form CP 0017 1012) : (i) "Appraisal" [p.10], the "Duties In The Event Of Loss Or Damage" [pp.10-11], "Loss Payment" [p.11], "Valuation" [p.12], and "Replacement Cost" [pp.14-15];, and (ii) provisions in the *Commercial Property Conditions* (Form CP 00 90 07 88), including the "Legal Action Against Us" clause. Each of these terms and provisions are set forth in **Exhibit "A"** attached hereto and are specifically incorporated herein by reference.

    10. The Policy's Appraisal Provision specifically provides the following in pertinent part:

***

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

***

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and
   **b.** Bear the other expenses of the appraisal and umpire equally.
      If there is an appraisal, we will still retain our right to deny the claim.

***

See **Exhibit "A"** - Policy (hereinafter "Appraisal Clause").

***The Loss And Resulting Insurance Claim***

    11. On or about September 10, 2017, that certain weather event known as Hurricane Irma caused extensive windstorm damage (including resulting water intrusion as a result of

3

windstorm-created openings in the building envelopes) to each of the scheduled insured building(s) located upon the Insured Premises ("Hurricane Irma", "Windstorm Damage", or "Loss"), including, without limitation, windstorm damage to the building(s)' interior finishes and roofing, exterior cladding, and windows systems.

12. The Policy affords coverage for those physical losses to the Insured Premises caused by and/or as a result of Hurricane Irma, subject to the terms and conditions set forth therein.

13. On or about September 25, 2017, the Association timely notified the Insurer of the Loss and resulting Windstorm Damage ("Insurance Claim"). Thereafter, the Insurer's representatives attended and conducted site visits to the Insured Premises; however, the exact nature, purpose, scope, and results of the Insurer's site visits remain unknown to the Insured.

14. On or about July 26, 2018 (more than ten (10) months post-Loss), the Insurer, through its representative(s), finally provided the Association with its written claim decision in this matter. Although the Insurer acknowledged insurance coverage for the Loss, and, further, that the Windstorm resulted in monetary damages of at least $401,694.75 (calculated on an estimated "Replacement Cost Valuation" or "RCV" basis), it nevertheless concluded that this damage amount was within the Policy's stated Named Storm Deductible [$719,582.55], and, therefore, advised that no insurance benefits were owed and that it would be closing its file at that time.

15. During the same timeframe, the Insured questioned the quality and timeliness of the Insurer's ongoing adjustment of the Insurance Claim, and, ultimately, moved forward with its own evaluation and assessment of those damages caused by and/or resulting from the Windstorm Damage. The Insured's then-existing (July 2019) evaluation and assessment of those damages caused by and/or resulting from the Windstorm Damage confirmed that the then-existing actual

4

amount and value of the covered losses at issue in the Insurance Claim, i.e., $3,703,516.41 (after application of the Policy's stated deductibles), greatly exceeded the Insurer's July 2018 RCV Estimate. The Association documented this evaluation in that certain July 3, 2019 *Sworn Statement In Proof Of Loss* ("POL") submission, a copy of which is in the Insurer's possession, custody and control. In short, the Insured's own evaluation and assessment amply demonstrated the Parties' continuous and ongoing disagreement over those amounts of insurance benefits due the Insured under the Policy with respect to the Loss. Given this ongoing disagreement, the Insured appropriately demanded the Insurer's submission to binding appraisal proceedings in accordance with the Policy's Appraisal Clause on or about July 8, 2019 ("Appraisal Demand").

16. In response to the Insured's POL submission and Appraisal Demand, the Insurer rejected the POL and provided no meaningful response to the Appraisal Demand. Shortly thereafter, the Insurer assigned the Insurance Claim to its appointed counsel; at that time, the Insurer (through counsel) requested the Insured's additional post-loss cooperation in (i) coordinating site inspections, (ii) preparing and submitting a second POL on a company-approved form, (iii) attending an Examination Under Oath ("EUO"), and/or (iv) providing additional documentation/information in support of the Insurance Claim.

17. At all times relevant hereto, the Association complied with the insurer's post-loss requests for a revised POL submission and request for additional information/documentation. Specifically, from late-summer 2019 through early summer 2022, the Insured supplied voluminous documentation/information in support of the Insurance Claim, including, without limitation, the revised February 23, 2022 POL and accompanying documentation in support thereof (hereinafter "Revised POL Claim Package", the entirety of which is in the Insurer's possession). The Revised POL Claim Package again confirmed the Parties' ongoing

disagreement on the amount-of-loss question arising under the Policy in the context of the Insurance Claim; specifically, the Revised POL Claim Package presented and documented the Association's revised post-deductible Loss calculation of $4,424,818.19.

18. On June 14, 2022, and while in the midst of the Parties' efforts to schedule and attend the Insurer's requested EUO, the Insurer finally agreed to the Insured's request for binding appraisal in accordance with the Policy's unilateral Appraisal Clause ("Appraisal Agreement").

19. Although the Parties entered into the Appraisal Agreement, the resulting Appraisal Proceedings on the amount-of-loss question are ongoing as of the filing date of this Complaint and have yet to be completed. The Insured respectfully avers that, but for the Insurer's initial delays in fully adjusting and resolving the Insurance Claim, including, but not limited to, its belated agreement to go to Appraisal (a demand first made by the Insured in July 2019), the Insurance Claim could and should have been resolved long before the filing date of this Complaint.

20. To avoid the filing of this Complaint, the Association (through undersigned counsel) contacted Insurer's counsel and requested the Insurer's entry into a straightforward tolling agreement to address any and all concerns/compliance with the Statute of Limitations deadline set forth in FLA. STAT §95.11(2)(e) and/or other any other time-sensitive deadlines mandated under the Policy given the pendency of the ongoing Appraisal Proceedings in accordance with the Policy's unilateral Appraisal Clause. Unfortunately, the Insurer rejected the Association's request for a tolling agreement.

21. Given the facts and circumstances of the Insurance Claim in the context of the ongoing Appraisal Proceedings, including, but not limited to, the Insurer's refusal to the entry of

a tolling agreement during the pendency of such proceedings, the Insured files this Complaint out of an abundance of caution in light of the approaching limitation deadlines set forth in FLA. STAT §95.11(2)(e) and the Policy. Moreover, the Insured respectfully files this Complaint for purposes of seeking this Court's confirmation of any Appraisal Award issued as a result of the Appraisal Proceedings and/or otherwise ensure this Court's jurisdiction over any and all supplemental questions arising under the Policy as a result of the Appraisal Proceedings and/or the resolution of the pending Insurance Claim.

22. In filing this action, which was the direct result of the Insurer's refusal to the entry of a tolling agreement, the Association affirmatively states that it is (i) not waiving any rights afforded under the Policy with respect to the Loss, and (ii) otherwise in full compliance with any and all stated post-loss conditions set forth in the Policy.

*The Association's Petition For Relief*

23. Prior to the institution of this action, Pointe Estero performed and/or otherwise satisfied all of those matters and things required of it to prosecute this action, including the satisfaction of all contractual, statutory, and/or procedural "conditions precedent" and/or "conditions subsequent" thereto, or, alternatively, has been excused from the performance of the same by virtue of the Insurer's conduct.

24. Alternatively, to the extent that Pointe Estero otherwise failed to satisfy or comply with the requisite condition's precedent and/or subsequent, the Insurer has not been substantially prejudiced by any such failure.

25. Alternatively, the Insurer waived Pointe Estero's compliance with any such conditions and/or is otherwise estopped from asserting any defenses relative thereto.

26. To the extent that this pleading makes reference to any written document, or sets of written documents, not otherwise attached hereto, said documents are already within the Insurer's possession, custody or control; thus, this pleading satisfies any applicable "notice" requirements imposed by the *Florida Rules of Civil Procedure* and/or Florida law.

27. To the extent that any stated claims for relief or causes of action set forth in this pleading are deemed to be mutually exclusive, contradictory, or inconsistent, such stated claim or cause of action has been pleaded individually and/or in the alternative.

## *Count I*
## *Action For Declaratory Judgment*

28. The Insured re-alleges and incorporates herein by reference Paragraph Nos.1 through 27 herein.

29. This is an action for declaratory relief pursuant to §§86.011 *et seq.* FLA. STAT; specifically, the Insured's request for this Court's (i) declaration of the Parties' rights, duties and responsibilities under the Policy with respect to the Loss and the Insurance Claim (and those insurance policy benefits recoverable thereunder); (ii) declaration of the legal status of each of the Parties as it concerns said Policy; and (iii) award of all other relief (separate and apart from the damages and/or other forms of relief available to the Insureds under any other stated count set forth herein).

30. There exists an ongoing and justiciable dispute between the Insured and Insurer with respect to the type/extent of coverages, coverage benefits, and/or contractual remedies due the Insured under the Policy's terms and provisions in light of the particular facts and circumstances of the Loss and resulting Insurance Claim, including, but not limited to, the Parties' rights, duties and responsibilities in light of the existing Appraisal Agreement and ongoing binding appraisal proceedings in furtherance of such agreement.

31. Given the facts and circumstances of the Insurance Claim and ongoing Appraisal

Proceedings, the Plaintiff has genuine concerns that those Policy terms and provisions relied upon by the Insurer in its adjustment of the Insurance Claim and resulting Appraisal Proceedings and/or its failure to extend those contractual benefits due the Insureds under the Policy are either (i) ambiguous as written, and/or (ii) ambiguous as applied to the facts and circumstances giving rise to the Loss and/or that are otherwise at issue in the Insurance Claim.

32. In accordance with Chapter 86 FLA. STAT., the Insured avers that it has genuine concerns and questions about its rights and the Insurer's duties under the Policy and the Appraisal Agreement; thus, it is seeking from this Court a judicial declaration of those rights, duties and responsibilities.

33. There exists a present, ascertained set of facts, and/or a present controversy concerning said facts, that requires this Court's declaration of the Parties' rights and obligations under the Policy.

34. Both the Insured and the Insurer have actual and adversarial interests in the Policy, the subject Insurance Claim, the Appraisal Agreement, and the ongoing Appraisal Proceedings.

35. The Insured seeks, among other things, this Court's declaration (i) that those damages at issue in the Insurance Claim constitute a covered loss or covered losses under the Policy, (ii) that the Insurer has previously acknowledged coverage for this loss or losses by virtue of its communications with the Insureds and/or its conduct, (iii) of the Insured's entitlement to binding appraisal proceedings in accordance with the Policy's Appraisal Clause, and (iv) that the Insured is in compliance with the Policy's "Legal Action Against Us" clause when read in conjunction with FLA. STAT §95.11(2)(e) in the context of the facts and circumstances attendant to the Insurance Claim.

36. Because the Policy was issued and delivered in Florida, it is subject to the terms of §§626.9373, 627.428, 57.104, and/or 57.041 FLA.STAT., which mandates an award of attorneys' fees, legal assistants' fees, and costs in favor of a prevailing insured.

9

**37.** In invoking this Court's jurisdiction pursuant to Chapter 86 FLA. STAT., the Insured specifically requests that this Court retain jurisdiction for the purpose of awarding any and all appropriate supplemental relief authorized by §86.061 FLA. STAT., including, without limitation, the enforcement of any resulting Appraisal Award, all claims for consequential damages and other relief authorized under Florida law, etc.

**38.** All parties having any interest in, and/or otherwise adversely affected by, the Insured's action for declaratory judgment are joined in this action.

**WHEREFORE**, the Insured respectfully requests that this Court declare the Parties' rights, duties and responsibilities under the Policy in this action including, without limitation, this Court's:

- **a.** Finding that this Court has jurisdiction over the Parties;

- **b.** Finding that this Court has jurisdiction over the subject matter;

- **c.** Finding that the Policy between the Insured and the Insurer was in full force and effect at all times relevant to the Loss;

- **d.** Finding that the facts and circumstances giving rise to the Insured's Insurance Claim constitute a covered loss or covered losses under the Policy;

- **e.** Construction of any and all ambiguities in the Policy's terms and provisions, either as written or as applied to the instant facts, in favor of coverage for those damages at issue in the Loss and resulting Insurance Claim;

- **f.** Finding that with respect to the Loss and the resulting Insurance Claim, the Insured has otherwise satisfied all other stated pre- and post-loss conditions contained within the Policy, or, alternatively, that the Insured's compliance with the same has been waived by the Insurer;

- **g.** Finding that given the specific facts and circumstances at issue in the Loss and the resulting Insurance Claim, the Insured has properly invoked the Policy's "Appraisal Clause" and, thus, is entitled to the resolution of the Insurance Claim via binding appraisal proceedings in accordance with the Policy;

- **h.** Finding that the Insured is in compliance with the Policy's "Legal Action Against Us" clause and/or otherwise satisfies the statutory requirements of FLA. STAT §95.11(2)(e) given the particular facts and circumstances at issue in this matter;

    i. Finding that in accordance with Florida law and the Policy, the Parties' Appraisal Panel shall have jurisdiction to conduct and conclude the Appraisal Proceedings with respect to those claims at issue in the Loss and resulting Insurance Claim, including, without limitation, the Insured's right to pursue all claims for all benefits due under the Policy's various coverages;

    j. Retention of its jurisdiction to confirm any Appraisal Award for the Insured in accordance with Florida law and/or otherwise adjudicate the Parties' rights and responsibilities under the Policy subsequent to the issuance of said award (if necessary);

    k. To the extent warranted by the instant facts and in accordance with Florida law, this Court's award of post-loss and/or post-judgment interest to the Insured;

    l. Adjudicating the Insured's entitlement to an award of those reasonable attorneys' fees, legal assistant fees and costs incurred in the prosecution of this action for declaratory relief, as authorized by §§627.428, 627.9373, 57.104 and 57.041 FLA. STAT.;

    m. This Court's retention of its jurisdiction for supplemental proceedings pursuant to §86.061 FLA. STAT.; and

    n. Adjudicating such other and further relief as this Court deems just and proper.

*Count II*
*Action For Breach Of Contract*

    39. The Insured re-alleges and incorporates herein by reference Paragraph Nos. 1 through 27 herein.

    40. This is an action for damages resulting from the Insurer's breach of the Policy.

    41. The Policy is a binding contract between the Parties.

    42. Rather than (i) honor the Insured's demand for binding appraisal in accordance with the Policy's Appraisal Clause, and/or (ii) otherwise pay to the Insured those benefits due under the Policy's available coverages for those covered damages caused by and/or arising from the Loss and/or as otherwise presented in the Insurance Claim, the Insurer unilaterally and

wrongfully breached the Policy by failing to extend those contractual benefits to return the Insured Premises and/or the Insured to their pre-loss conditions.

43.     As a result of the Insurer's breach of the Policy, the Insured has been monetarily damaged, denied the ability to access those contractual mechanisms to resolve the Insurance Claim, and/or has otherwise lost the full use of the Insured Premises.

44.     As a result of the Insurer's actions, the Insured has appropriately incurred and become obligated to pay attorney's fees and costs in prosecuting this claim for insurance coverage, including the relief requested herein. The Insured is entitled to have the Insurer reimburse said fees and costs pursuant to §§626.9373, 627.428, 57.104 and/or 57.041 FLA. STAT.

**WHEREFORE**, the Insured, POINTE ESTERO CONDOMINIUM ASSOCIATION, INC., requests the entry of a Final Judgment against LANDMARK AMERICAN INSURANCE COMPANY, wherein the Insured is awarded compensatory damages, consequential damages, attorney's fees, costs, prejudgment, post-loss and/or post-judgment interest, together with all other relief that this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Without waiver of their contractual right to binding appraisal proceedings in accordance with the Policy's Appraisal Clause, the Plaintiff hereby demands trial by jury on all other claims for which a right to jury trial exists under the constitution of the State of Florida, the *Florida Statutes*, and/or governing law.

DATED this 8th day of September 2022.

*[Rest of Page Intentionally Left Blank]*

Respectfully Submitted,

**BOYLE, LEONARD & ANDERSON, P.A.**

*/s/ Gregory L. Evans*
Gregory L. Evans, Esq.
FBN 0767824
Maxwell H. Stape, Esq.
FBN 1007734
Jennifer Manso, Esquire
FBN:121099
9111 W. College Pointe Drive
Fort Myers, FL 33919
Phone: 239.337.1303
Facsimile: 239.337.7674
eservice@insurance-counsel.com
gevans@insurance-counsel.com
jmanso@insurance-counsel.com

By: */s/ Gregory L. Evans*
   ***Attorneys for Plaintiff***

13